United States District Court
Southern District of Texas
**ENTERED**
June 06, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE CAMACHO, | § | |
| Plaintiff | § | |
| | § | |
| | § | Civil Action No. 1:21-cv-146 |
| v. | § | |
| | § | |
| | § | |
| HEBER DUARTE TORRES, et al | § | |
| Defendant | § | |

### MAGISTRATE JUDGE'S
### AMENDED REPORT AND RECOMMENDATION[1]

Before the Court are various pleadings filed by the parties in the above-referenced cause, which include the following:  1) Defendant Jack Marr's Motion to Dismiss (Dkt. No. 37); 2) Defendant Greg Abbott's Motion to Dismiss (Dkt. No. 38); 3) Defendant Glenn Hegar's Motion to Dismiss (Dkt. No. 39); 4) Defendant Lisa Harvey-Moore's Motion to Dismiss (Dkt. No. 40); 5) Defendants Codi Balli, James Michael Brewer, City of Victoria, A. Davis, Lavaca County, Lavaca County Sheriff's Office, Michael Shawn Leet, T. Michael O'Connor, Rowland Elementary, Victoria County, Victoria County Jail, Victoria County Sheriff's Office, and Victoria Police Department's Motion to Dismiss (Dkt. No. 41); 6) Defendant David Sanchez's Motion to Dismiss (Dkt. No. 42); 7) Defendants Noah's Ark and Debbie White's Motion to Dismiss (Dkt. No. 44); 8) Defendant Leigh Burton's Motion to Dismiss (Dkt. No 60); 9) Defendants Jodi Council and Kid Versity's Motion to Dismiss (Dkt. No. 66); 10) Defendants Laura Howard and Kansas Department for Children and Families' Motion to Dismiss (Dkt. No. 67); 11) Defendant Jill Williams' Motion to Dismiss (Dkt. No.

---

[1] In light of a recent Fifth Circuit opinion, this Amended Report and Recommendation is issued to eliminate a prior finding.  *See infra* FN 8.

129); 12) Defendant Ken Paxton's Motion to Dismiss (Dkt. No. 130); 13) Defendant Heber Duarte Torres' Motion to Dismiss (Dkt. No. 131); 14) Defendant Women's Crisis Center's Motion to Dismiss (Dkt. No. 133); 15) Defendant Texas Department of Family and Protective Services' Motion to Dismiss (Dkt. No. 136); 16) Defendants City of Yoakum, Paul Lilley, Michael Pierman, and Yoakum Police Department's Amended Motion to Dismiss (Dkt. No. 164);[2] 17) Defendants Christian Fitzgerald, the Office of the Attorney General – Child Support Division 707, Dayna Tuttle, and the Child Support Disbursement Unit's Amended Motion to Dismiss (Dkt. No. 165);[3] and 18) Plaintiff Jose Camacho's "Motion for Injunctive, Declaratory, Habeas Corpus Mandamus Relief and Opposition to Defendants' Motions to Dismiss" (hereinafter, Plaintiff's "Response").

For the reasons provided below, it is recommended that the Court: (1) **GRANT** the pending motions to dismiss (Dkt. Nos. 37, 38, 39, 40, 41, 42, 44, 60, 66, 67, 129, 130, 131, 133, 136, 164, 165); (2) **DISMISS** Plaintiff's claims against the defendants listed above (collectively, "Defendants"); and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## I.    <u>Jurisdiction and Venue</u>

The Court has federal question subject matter jurisdiction because Camacho has alleged violations of 42 U.S.C. § 1983.  *See* Dkt. No. 25; 28 U.S.C. § 1331 ("The district

---

[2] On October 28, 2022, Defendants City of Yoakum, Paul Lilley, and Michael Pierman filed their original motion to dismiss.  Dkt. No. 52.  At the status conference held on February 14, 2023, the Court granted Defendants' oral motion for leave to amend the motion to dismiss to include Defendant Yoakum Police Department.  *See* Minute Entry dated February 14, 2023.  Subsequently, on February 14, 2023, Defendants filed the instant amended motion to dismiss.  Dkt. No. 164.

[3] On October 20, 2022, Defendants Christian Fitzgerald, the Office of the Attorney General – Child Support Division, and Dayna Tuttle filed their original motion to dismiss.  Dkt. No. 43.  At the status conference held on February 14, 2023, the Court granted Defendants' oral motion for leave to amend the motion to dismiss to include Defendant Child Support Disbursement Unit.  *See* Minute Entry dated February 14, 2023.  On February 21, 2023, Defendants filed the instant amended motion to dismiss.  Dkt. No. 165.

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Venue is proper in this District because a substantial portion of the alleged events giving rise to Camacho's lawsuit occurred here. *See* Dkt. No. 25 (describing actions occurring in Cameron County, Texas); 28 U.S.C. § 124(b)(4) ("The Brownsville Division comprises the counties of Cameron and Willacy."); 28 U.S.C. § 1391(b)(2) (noting that a civil action may be brought in the judicial district where "a substantial part of the events or omissions giving rise to the claim occurred").

## II.   Background

### A.  Relevant Procedural History

On September 23, 2021, Camacho filed suit against numerous defendants asserting allegations of wrongdoing related to child support, child custody, and divorce proceedings in State court.  Dkt. No. 1.  On September 29, 2021, the Court ordered Camacho to file an amended complaint by November 15, 2021, compliant with the applicable Federal and Local Rules.  Dkt. No. 5.  Following many extensions,[4] Camacho filed his First Amended Complaint on July 29, 2022.  Dkt. No. 25.[5]  In response, many defendants filed motions to dismiss; the case is now ripe for review.

On April 28, 2023, the Court dismissed a number of Camacho's claims for failure to timely serve the defendants and to comply with the Court's orders.  Dkt. No. 201.  The Court summarizes the remaining claims below.

---

[4] *See* Dkt. No. 166, 2-4.
[5] The Court notes that the First Amended Complaint still contains some of the deficiencies identified by the Court's prior order (e.g., the requirement to "identify the parties against whom each claim is asserted"). Dkt. No. 5 at 1.

### B. Plaintiff's Amended Complaint

Camacho's amended complaint includes arguments that are incoherent and difficult to follow, particularly as to which claims and causes of action he is asserting against each of the defendants. From a liberal construction of his pleadings, Camacho appears to assert claims of wrongful conduct against the various defendants,[6] based on their alleged involvement in his separation and divorce from Heber Duarte Torres and related domestic and custody disputes involving their children.

### 1. Factual Allegations

As best the Court can discern, Camacho claims that Heber Duarte Torres and her boyfriend Jesus Evaristo Guerra Calderon, conspired to illegally remove his children and car from his home in Yoakum. Dkt. No. 25 at 13-14. Camacho claims that Women's Crisis Center staff aided Torres in "the restraint, retention, concealment and secreting of [his] children." *Id.* He also sues Michael Pierman, Paul Lilley, the Yoakum Police Department, and the Lavaca County Sheriff's Office for conspiring with Torres. *Id.* at 15.

---

[6] Among Camacho's claims is a claim against the City of Yoakum Police Department. Pursuant to Rule 17(b), an entity must have the capacity to be sued. Fed. R. Civ. P. 17(b). This applies to city departments. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Civ. 1991). Whether an entity enjoys a separate legal existence and has the capacity "to sue or be sued is determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b). "In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation . . . 'to grant the servient with jural authority.'" *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (internal citation omitted). The City of Yoakum Police Department is "a subdivision of the City of [Yoakum] and therefore does not have a separate legal identity that would allow it to sue and be sued." *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 449-50 (S.D. Tex. 2021). Because the City of Yoakum Police Department lacks the legal capacity to be sued, Camacho cannot state a plausible claim for relief against it. Accordingly, the City of Yoakum Police Department should be dismissed for failure to state a claim upon which relief can be granted. Similarly, Camacho asserts claims against the Office of the Attorney General Child Support Division and Child Support Disbursement Unit. It is not disputed that these entities are branches within the Office of the Attorney General. As previously stated, where an entity has no separate legal existence, it cannot be sued in its own name. *Darby*, 939 F.2d at 313. In this case, the Attorney General Child Support Division and Child Support Disbursement Unit are sub-units of the Office of the Attorney General, which is a state agency. A state agency cannot be sued in its own name since that is effectively an action against the State of Texas, which is barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. at 101-02. As such, the Attorney General Child Support Division and Child Support Disbursement Unit should be dismissed for failure to state a claim upon which relief can be granted.

Camacho alleges that City of Victoria Police Officer Codi Balli illegally prosecuted him for a traffic violation and assaulted him with deadly weapons. *Id.* at 19. Camacho claims the Office of the Victoria County District Attorney defamed him in a press release regarding his arrest. *Id.* at 20.

Camacho states that he was fraudulently induced by the "Victoria County defendants" (a group which he fails to define), to plead guilty to a traffic violation. *Id.* at 21. Camacho asserts that he was not allowed to consult with an attorney while in custody or prior to pleading guilty. *Id.*

Camacho alleges that he was threatened and fraudulently induced by Jill Williams, Assistant Attorney General for the Office of the Attorney General Child Support Division, to sign an agreement during his child support proceedings. *Id.* at 23-24.

He further claims that Debbie White (who Camacho claims works for Kid Versity)[7], Kid Versity, Noah's Ark, and the Victoria Police Department attempted to cause him to be incarcerated by claiming that he was attempting to kidnap his minor child, S.C. *Id.* at 25.

Camacho asserts that in 2019, the Kansas Department of Child Support Services, under the direction of Laura Howard, served a wage garnishment order on his employer aimed at converting his money. *Id.* at 26.

Camacho states that Bryan Fitzgerald, an employee of the Office of the Attorney General – Child Support Division 707, filed a frivolous action to maliciously prosecute him. *Id.* at 27-28. Camacho alleges that Torres, the Office of the Attorney General – Child Support Division 707, and Fitzgerald were informed that the action was fraudulent, but they failed to stop harassing him. *Id.* at 28.

---

[7] White states, however, that she owned and operated Noah's Ark.

Camacho asserts that the Texas Department of Family and Protective Services ("DFPS") failed to act in the best interest of one of his children despite having knowledge of a police report of an incident where the child crossed a highway in 2018. *Id.* at 29. He further claims a DFPS employee declined to fulfill his request for records pertaining to his children. *Id.* at 30.

Camacho then claims that in October of 2020, he requested school records for one of his children from Rowland Elementary school, but Debbie White falsely stated that his daughter did not attend the school. *Id.*

Camacho alleges that in September of 2020, Torres' attorney Dayna Tuttle lied to a State court, stating that Camacho had been previously informed regarding the judicial proceedings that resulted in the impairment of his rights. *Id.* at 30-31. He further alleges that Judge Lisa-Harvey Moore did not allow for a record to be made of a July 2020 child support hearing. *Id.* at 31. He claims that the person responsible for maintaining court records, Leigh Burton, admitted that no record of the hearing existed. *Id.*

Camacho alleges that Judge Jack Marr, the Office of Attorney General – Child Support division, and Judge David Sanchez colluded to deprive him of making a court record regarding his child custody and divorce proceedings. *Id.* at 33-34. He also asserts that Judge Sanchez abused his discretion in connection with orders for which he lacked jurisdiction to issue. *Id.* at 36.

2.  Causes of Action

As stated above, Camacho's pleadings are incoherent and difficult to discern. They mainly recite various incidents which occurred following Camacho's separation and subsequent divorce from Torres, his ex-wife. Camacho appears to basically assert that various officials have conspired to harm him since his wife left with his children.

Critically, he does not articulate what specific causes of action he asserts against any of the named defendants.  Based on a liberal construction of Camacho's pleadings, the Court can discern that he is attempting to assert various claims on behalf of himself and his children.  Those claims allege conspiracy, malicious prosecution, false arrest and imprisonment, fraudulent inducement, defamation, and violations of his civil and due process rights.

In sum, Camacho requests that the Court issue injunctive relief including sole custody of his children, dismissal of his divorce action and child custody proceedings, and the institution of criminal charges against the defendants, as well as a monetary award of $2,500,000.

### III.   Legal Standards

#### A.  Federal Rules of Civil procedure 12(b)(2) and 12(b)(5)

Federal Rules of Civil Procedure 12(b)(2) and (5) authorize dismissal for lack of personal jurisdiction and for lack of proper service.  Fed. R. Civ. P. 12(b)(2), (5).  Pursuant to Federal Rule of Civil Procedure 4, "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes the service."  Fed. R. Civ. P. 4(c)(1).  After effecting service, unless waived, the plaintiff must file proof of service with the court.  Fed. R. Civ. P. 4(l).  When a plaintiff fails to effect service "within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant."  Fed. R. Civ. P. 4(m).

Exceptions to this rule include cases in which the plaintiff shows good cause for his failure to properly effect service such that the court should extend the time.  *Id.*; *Lewis v.*

*Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017) ("Rule 4(m) requires dismissal if a defendant is not served within 90 days after the complaint is filed, unless the plaintiff shows good cause for the failure). Actions, or lack thereof, caused by inadvertence, mistake, or ignorance of the law are not sufficient to show good cause. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir. 1994). Even pro se parties must comply with the "relevant rules of procedure." *Birl v. Estelle*, 600 F.2d 592, 593 (5th Cir. 1981). "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990).

Rule 4(e) allows for service on an individual either under State law or by: (1) delivery of a copy of the summons and complaint to the defendant personally; (2) leaving a copy of each at the defendant's home with a resident of suitable age and discretion; or (3) delivering a copy of each to an agent authorized to receive service of process. Fed. R. Civ. P. 4(e). Texas Rule of Civil Procedure 106(a) provides that service of a citation may be done by delivery to the defendant in person or by mailing, by registered or certified mail, return receipt requested. Tex. R. Civ. P. 106(a).

### B. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are "courts of limited jurisdiction" and possess "only that power authorized by Constitution and statute." *Kokkoken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court, then, must dismiss an action once it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Motions brought under Federal Rule of Civil Procedure 12(b)(1) "allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citation omitted). "When a Rule 12(b)(1) motion is filed in conjunction

8

with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

"The party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (citing *Ramming*, 281 F.3d at 161). "When ruling on the motion, the district court may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts. The motion should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle her to recovery." *Morris*, 852 F.3d at 419 (internal citations omitted).

## C. Federal Rule of Civil Procedure 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) if the claimant fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a). *Richter v. Nationstar Mortgage, LLC*, No. H-17-2021, 2017 WL 4155477, at *3 (S.D. Tex. Sept. 19, 2017) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009)). Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This entails "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citation omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court must accept all well-pleaded facts in the complaint as true, "even if doubtful or suspect," and view them in the light most favorable to the plaintiff. *Pena Arita v. United States*, 470 F.

Supp. 3d 663, 680 (S.D. Tex. 2020).  A claim will survive an attack under Rule 12(b)(6) if the well-pleaded facts allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

The Court must construe a pro se plaintiff's pleadings liberally and accept all well-pleaded allegations as true.  *Perez v. United States*, 312 F.3d 191, 194-96 (5th Cir. 2002).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, a court may dismiss a frivolous complaint when it is based on meritless legal theories or baseless allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

## IV.    Discussion

The Court will address each of Camacho's claims, although not necessarily in the order presented.  The Court will further address each jurisdictional argument according to its type.

### A.  Preliminary Matters[8]

---

[8] In the original Magistrate Judge's Report and Recommendation (Dkt. No. 205), the undersigned found that Camacho's claims on behalf of his children could not stand because as a parent who is not a licensed attorney, he could not lodge claims on behalf of his children.  Dkt. No. 205 at 10 (citing to *Sprague v. Department of Family & Protective Servs.*, 547 F. App'x 507, 508 (5th Cir. 2013) (internal citations omitted) (holding that individuals without a law license cannot represent other parties, including minor children, on a next-friend basis).  However, the Fifth Circuit has recently held that "an absolute bar on *pro se* parent representation is inconsistent with [28 U.S.C.] § 1654." *Raskin v. Dall. Indep. Sch. Dist.*, No. 21-11180, 2023 WL 3774588, __ F.4th __ , at *2 (5th Cir. 2023).  While it does not change the Court's decision, this amended Report and Recommendation is being issued for clarification purposes only based on the referenced Fifth Circuit opinion.  Based on the findings herein recommending dismissal for lack of jurisdiction, a consideration of whether federal or state law designates Camacho's children's claims are his "own" such that he can represent them is not essential to the Court's analysis on the pending motions to dismiss.  *Id.* at *10.

1. <u>Camacho's petition for habeas corpus should be dismissed.</u>

Camacho petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that he was wrongfully convicted in a criminal case after attempting to exercise his parental rights.  Dkt. No. 180 at 55.  An individual may seek habeas relief under 28 U.S.C. § 2241 if he is "in custody" under federal authority "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  It is well established that the "sole function" of a habeas petition is to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).  Indeed, the Fifth Circuit follows the clear rule that "[i]f a favorable determination . . . would not automatically entitle [the detainee] to accelerated release . . . the proper vehicle is a [civil rights] suit."  *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997).

Camacho does not allege that any defendant maintains custody over him in violation of a law of the United States.  There is no precedent to overcome the custody requirement in situations where government supervision or imminent incarceration are absent.  Camacho, then, fails to satisfy Section 2241's jurisdictional requirement and his petition for writ of habeas corpus should be dismissed without prejudice.

2. <u>Camacho's claims for the imposition of criminal charges should be dismissed.</u>

Camacho asserts he is entitled to relief against the defendants in the form of criminal charges for alleged due process violations against him pursuant to 42 U.S.C. § 1983.  However, he is mistaken and his argument lacks merit.  Camacho cannot maintain these claims because Section 1983 does not authorize the imposition of criminal charges.  *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 635 (N.D. Tex. April 30, 2007) (internal citation omitted).  Furthermore, "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614,

619 (1973).  And, a private citizen does not gain the standing to bring criminal charges by the filing of a civil suit.  *Flemings v. City of Dallas*, No. 3:10-cv-1188-N-BH, 2010 WL 3938377, at *2 (N.D. Tex. Aug. 21, 2010).  Camacho, then, has failed to state a claim with respect to the criminal charges sought against the defendants.  Therefore, the claims seeking the imposition of criminal charges should be dismissed with prejudice.

Liberally construing the remainder of the amended complaint, Camacho appears to assert various claims against the defendants, including constitutional violations under 42 U.S.C. § 1983 and State law claims for conspiracy, malicious prosecution, false arrest and imprisonment, fraudulent inducement, and defamation.  *See generally* Dkt. No. 1. Defendants argue that the claims should be dismissed on the following grounds: (1) improper service of process; (2) the *Rooker-Feldman* doctrine; (3) *Younger* abstention; (4) lack of standing; (5) immunity from suit; (6) the domestic relations exception; and (7) failure to state a claim upon which relief can be granted.

While the Court does not reach all of Defendants' arguments, it finds that, to the extent that Camacho seeks relief from any defendant not properly served, Rule 4(m) bars such relief.  The *Rooker-Feldman* doctrine prohibits Camacho's claims for equitable and declaratory relief to overturn or alter state court orders.  And, *Younger* abstention bars him from challenging ongoing state court litigation.  Therefore, Camacho's remaining claims should be dismissed for lack of standing.

## B.  Service of Process

Attorney General Ken Paxton and Torres have moved to dismiss the claims against them due to insufficient service of process.  *See* Dkt. Nos. 13, 14.

1.   <u>Camacho failed to properly serve Paxton.</u>

Paxton states that Camacho failed to properly serve him within the prescribed period by delivering a copy of the summons and complaint to the security guard at the Office of the Attorney General.   "Plaintiff's 'Return of Service of Summons' makes the unsubstantiated vague assertion that 'an unidentified female who declared she was a direct employee authorized to accept service refused.'"   Dkt. No. 130 at 4.   Paxton contends that this individual was not authorized to accept service on his behalf.   Camacho has not filed a response to this argument.

Camacho has not personally served Paxton pursuant to the Rules, and he has not demonstrated that the "unidentified female" who received the documents was authorized to receive service of process on Paxton's behalf.   Because he has not complied with the rules governing service, his attempted service of process is insufficient.   Rule 4(m) warrants a dismissal without prejudice when service has not been effected within 120 days of filing the complaint, unless the plaintiff demonstrates good cause to extend that time period.   Fed. R. Civ. P. 4(m).   The 120-day period has passed, and Camacho has not shown good cause to extend the time.   As such, Paxton's motion to dismiss for insufficient service of process should be granted and the claims against him should be dismissed without prejudice.

2.   <u>Camacho failed to properly serve Torres.</u>

Torres states that Camacho failed to properly serve her because she was served untimely (386 days after the action was initiated) and has only been served with a copy of the original complaint.   "Ms. Duarte has not been served with Plaintiff's First Amended Complaint."   Dkt. No. 131 at 4. Camacho has not filed a response to this argument.

As previously stated, a plaintiff must complete service of process within 90 days of filing a complaint or face potential dismissal without prejudice. Fed. R. Civ. P. 4(m). When the deadline to effect service has passed, the party attempting service must demonstrate "good cause" for his failure to serve the opposing party. *Kreimerman*, 22 F.3d at 645.

The 90-day deadline provided by Rule 4(m) for serving Torres expired well before she was served. In addition, Camacho offers no excuse for failing to serve her timely. Accordingly, he has not demonstrated "excusable neglect" as required to establish good cause and dismissal of the claims against Torres is appropriate. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985). Furthermore, Camacho's pro se status does not excuse his failure to effectuate service on Torres until 386 days after the complaint was filed. *Kersh v. Derozier*, 851 F.2d 1509, 1512 (5th Cir. 1988). Torres' motion to dismiss for insufficient service of process should be granted and the claims against her should be dismissed without prejudice.

## C. *Rooker-Feldman* Doctrine

Several defendants argue that Camacho's claims against them are barred under the *Rooker-Feldman* doctrine.[9] However, Camacho argues that *Rooker-Feldman* does not apply since "this is an original action at law." Dkt. No. 180 at 79.

---

[9] These defendants include: Judge Jack Marr, Governor Greg Abbott; Comptroller Glenn Hegar; Judge Lisa Harvey Moore; the City of Victoria, the Victoria Police Department, Cody Balli, James Michael Brewer, and Michael Shawn Leet (hereinafter, the "City of Victoria Defendants"); Rowland Elementary; Lavaca County and the Lavaca County Sheriff's Office (hereinafter, the "Lavaca County Defendants"); Victoria County, the Victoria County Sheriff's Office, the Victoria County Jail, Sherriff T. Michael O'Connor, and A. Davis (hereinafter, the "Victoria County Defendants"); Judge David Sanchez; Leigh Burton; Joni Council (erroneously designated as "Jodi Council"); KidVersity, LLC (erroneously designated as "Kid Versity"); Jill Williams; Attorney General Ken Paxton; the Women's Crisis Center ("WCC"); DFPS; the City of Yoakum, Paul Lilley, and Michael Pierman (hereinafter, the "City of Yoakum Defendants"); Christian Fitzgerald; the Attorney General's Office; and Dayne Tuttle.

The *Rooker-Feldman* doctrine presents a threshold jurisdictional question. *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381-82 (5th Cir. 2013). It divests federal courts of jurisdiction "to entertain collateral attacks on state court judgments." *Kam v. Dall Cnty.*, 756 F. App'x 455, 455 (5th Cir. 2019) (internal citation omitted). The doctrine applies to cases in which "the losing party in a state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Miller v. Dunn*, 35 F.4th 1007, 1010 (5th Cir. 2022) (internal citation omitted). The doctrine prevents review of "the precise claims presented to the state court" and "claims that are 'inextricably intertwined' with a state court decision." *Kam*, 756 F. App'x at 455-56 (internal citation omitted).

Federal courts have consistently found the *Rooker-Feldman* doctrine to bar federal jurisdiction over family disputes in state court, including divorce and child custody matters. *See Roland v. Texas*, No. 4:21-cv-415, 20022 WL 1192781, at *7 (E.D. Tex. Jan. 26, 2022) (collecting cases); *Meaux v. U.S. Gov't*, 648 F. App'x 409, 410 (5th Cir. 2016) (internal citation omitted). Notwithstanding, "*Rooker-Feldman* does not bar a federal lawsuit simply because it challenges the state court's legal conclusions or alleges that the parties misled the state court." *Saloon v. Tex. Dep't of Fam. And Child Protective Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014) (internal citation omitted). The *Rooker-Feldman* doctrine "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached [and] . . . generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." *Weaver v. Tex. Cap. Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).

Pursuant to the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction to consider Camacho's claims which seek to challenge state court orders. These include his claims seeking to overturn his criminal convictions and relitigate issues from his divorce action and child custody proceedings. *See, e.g.*, *Bird v. Fletcher*, No. 9:19-cv-220, 2020 WL 2951891, at *6-7 (E.D. Tex. May 1, 2020) (holding that the Section 1983 claim was barred by the *Rooker-Feldman* doctrine where the plaintiff sought to undo adverse rulings in the corresponding state child custody case). Although Camacho seeks to distinguish this case, the pleadings show that his claims are driven by his disagreement with the state courts' rulings in the underlying criminal, divorce, and child custody proceedings. He now seeks to attack those decisions in a new forum. However, as discussed above, federal courts lack the jurisdiction to review or modify those orders.

Similarly, federal courts have consistently held that, when seeking equitable or declaratory relief, claims alleging a conspiracy with state court judges are barred by *Rooker-Feldman*. *See Bird*, 2020 WL 2951891, at *7 (citing *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012)); *Nagy v. George*, 3:07-cv-368-K, 2007 WL 2122175, at *4 (N.D. Tex. July 23, 2007) (where plaintiff sued a number of parties in a related state court case, including his ex-wife and the presiding judge, it would necessarily have to decide upon the propriety of the custody, visitation, and marital property issues in the divorce decree; therefore, the plaintiff's claims were inextricably intertwined with the rulings of the state court). Accordingly, Camacho's claims for equitable and declaratory relief specifically against the state court judges are also barred. Defendants' motions to dismiss pursuant to the *Rooker-Feldman* doctrine should be granted and Camacho's claims should be dismissed without prejudice.

### D. *Younger* Abstention

Defendants[10] argue that the Court should decline to exercise jurisdiction over Camacho's claims seeking to override ongoing state divorce and child custody proceedings pursuant to the abstention doctrine outlined in *Younger v. Harris*, 401 U.S. 37 (1971). Camacho contends that the Court should not abstain because he does not have a state forum where he can raise his federal questions and he "has not had a full and fair opportunity to litigate his constitutional claims". Dkt. No. 180 at 75-76.

Abstention under *Younger* led federal courts to recognize "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Sprint v. Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). *Younger* abstention applies in three "exceptional" circumstances: "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 73 (internal citation omitted).

Where one of the three circumstances is raised, "the *Younger* doctrine requires that federal courts decline to exercise jurisdiction when three conditions are met: '(1) the federal proceedings would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Marlett v. Heath*, No. 3:18-cv-2812-M-BN, 2018 WL 5723163, at *2 (N.D. Tex. Oct. 31, 2018) (quoting *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012)). The Court should abstain if the conditions are met, unless the plaintiff demonstrates bad

---

[10] *See* footnote 5.

faith, harassment, or another extraordinary circumstance that would make abstention improper. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 429 (1982).

The third circumstance is at issue in this case, as federal courts consistently abstain from intervening in cases that are inextricably connected to the important state interests of child custody and domestic relations issues. *See, e.g.*, *Marlett v. Heath*, No. 3:18-cv-2812-M-BN, 2018 WL 5723163, at *3 (N.D. Tex. Oct. 23, 2018) (abstaining from ruling on a father's challenge to California state actions that allegedly violated a Texas child support and custody order); *Machetta v. Moren*, No. 4:16-cv-2377, 2017 WL 2805192, at *5 (S.D. Tex. Apr. 13, 2017) (abstaining from ruling on a father's challenge to procedures that two judges followed in issuing a temporary restraining order against him); *Stewart v. Wells*, No. 4:19-cv-598-P-BP, 2020 WL 3146866, at *15 (N.D. Tex. May 26, 2020) (citing *Karl v. Cifuentes*, No. 15-cv-2542, 2015 WL 4940613, at *4 (E.D. Pa. Aug. 13, 2015) ("'Custody cases are particularly appropriate for *Younger* abstention.'"). *See also Jasper v. Hardin County Sheriff's Dept.*, 1:11-cv-408, 2012 WL 4480713, at * (E.D. Tex. Sept. 5, 2012) (finding that "the Court should abstain from considering the plaintiffs' claims which seek to override the ongoing divorce proceedings and their request for injunctive relief.  Issuing the request would violate the *Younger* abstention doctrine by directly affecting the ongoing state court proceeding.").

Here, the Court should abstain from ruling on Camacho's claims because all three conditions are met.  Continuing to hear this case would interfere with ongoing state court proceedings.  Regulation of child custody and domestic relations matters is an important state interest.  *Marlett*, 2018 WL 5721363, at *3.  Despite his objections, the Court finds that Camacho has been afforded adequate opportunity to litigate his claims through the

pending state court actions and the right to appeal adverse judgments to the state appellate court. *See Middlesex Cty.*, 457 U.S. at 325. In addition, none of the limited exceptions to the *Younger* abstention doctrine apply to his case. Since the *Younger* abstention doctrine bar Camacho's claims, Defendants' motions to dismiss should be granted and Camacho's claims should be dismissed without prejudice.

### E. Standing

In addition to his claims seeking to alter state court judgments and intervene in ongoing state court proceedings as discussed above, Camacho also claims that: (1) the Women's Crisis Center aided and abetted Torres in the restraint and retention of Camacho's children (Dkt. No. 25 at 14, 22); (2) Michael Pierman, Paul Lilley, and the Lavaca County Sheriff's Office also conspired with Torres (*Id.* at 15); (3) Codi Balli illegally prosecuted him for a traffic violation and assaulted him with deadly weapons (*Id.* at 19); (4) the Office of Victoria County District Attorney defamed him in a press release (*Id.* at 20); (5) the Victoria County defendants fraudulently induced him to plead guilty (*Id.* at 20-21); (6) Debbie White, Kid Versity, Noah's Ark, and the Victoria Police Department attempted to get him arrested by claiming that he was attempting to commit kidnapping (*Id.* at 25); (7) the Kansas Department of Child Support Services and Laura Howard converted his funds for child support (*Id.* at 26); (8) Bryan Fitzgerald filed a frivolous action to maliciously prosecute him; (9) DFPS had notice of a 2018 police report for an incident where Camacho's child crossed a highway but failed to act, and later failed to fulfill a records request pertaining to his children (*Id.* at 29, 30); (10) Debbie White falsely informed him that his child did not attend Rowland Elementary School (*Id.* at 30); and (11) Leigh Burton failed to maintain the record of a July 2020 child support court hearing (*Id.* at 31).

A number of the defendants implicated by those claims have argued that Camacho lacks standing because he does not present a justiciable controversy capable of redress.[11] Camacho responds that he has standing because he seeks "relief in the form of monetary damages, and any other relief authorized by law, and requests this Court take supplemental jurisdiction of State claims and charges brought against them out of the original action . . . Such are original federal questions that fall within this court's subject matter jurisdiction." Dkt. No. 180 at 48.

Again, Camacho is mistaken; he confuses the requirement of standing with the Court's subject matter jurisdiction.  Article III of the Constitution requires that litigants possess standing to sue in federal court.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  A plaintiff generally must demonstrate "a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination."  *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (internal citation omitted).  The constitutional requirements for standing include: (1) injury in fact; (2) causation; and (3) redressability.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal citation omitted).  The injury-in-fact requirement must involve "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations omitted).  An injury in fact must be "suffered by the plaintiff, not someone else."  *Stringer v. Whitley*, 942 F.3d 715, 720-721 (5th Cir. 2019) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972)).

---

[11] These defendants include: the City of Victoria Defendants, Rowland Elementary, the Lavaca County Defendants, the Victoria County Defendants, Leigh Burton, the Women's Crisis Center ("WCC"), DFPS, Paul Lilley, and Michael Pierman.

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "[I]f the plaintiff does not carry his burden clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute, then dismissal for lack of standing is appropriate." *Hotze v. Burwell*, 784 F.3d 984, 933 (5th Cir. 2015) (internal citation omitted).

1. Camacho lacks standing as to the claims against the City of Victoria Defendants, Rowland Elementary, the Lavaca County Defendants, and the Victoria County Defendants.

Camacho claims that he and his children were injured by the conduct of the City of Victoria Defendants, Rowland Elementary, the Lavaca County Defendants, and the Victoria County Defendants. *See generally* Dkt. No. 25 at 14-30.   However, these defendants argue that Camacho lacks standing to assert the claims against them.   Dkt. No. 41.   In support, they further argue that Camacho does not allege any injury to himself or his children that was caused by these defendants' actions; the Court agrees.

Camacho does not allege facts to show a particularized injury fairly traceable to the actions of the City of Victoria Defendants, Rowland Elementary, the Lavaca County Defendants, and the Victoria County Defendants.   It is clear that he feels that he and his children were wronged by these defendants.   However, what actual injury he and his children suffered as a result of their actions remains unclear.   For example, Camacho's allegations that the City of Victoria and Victoria County, with the aid of the Women's Crisis Center staff "aided and abetted defendant Heber Duarte Torres in the restraint, retention, concealment and secreting of the Plaintiff's children, when they caused the Plaintiff to be removed from his home" are conjecture and lack concrete, particularized facts.   Dkt. No. 25 at 14-15.   Similarly, his allegations that Codi Balli "prosecute[d] and . . . entrap[ped] plaintiff into a traffic violation, to find probable cause against plaintiff and

reason to impair plaintiff's parental rights, and liberty by legally processing plaintiff and incarcerating him" are also vague and speculative. *Id.* at 18-19 (errors in original).

So are allegations that "[t]he Office of the Victoria County District Attorney issued a press release that caused the defamation, libel and slander", and that Camacho was "tricked by the Victoria County defendants to admit guilt to 'Wide Right Turn,' by inducing plaintiff to sign said plea agreement". *Id.* at 20-21. Along the same lines, the allegations that Rowland Elementary staff told him that his child did not attend the school and gave him "wrong and false information with the intent to conceal records" and cause him "mental anguish and emotional distress" are insufficient to state a cognizable claim. *Id.* at 30.

The Court finds that these allegations fail to identify any injury that is personal and individual to Camacho or his children. Said another way, his statements are conclusory and do not state facts that are fairly traceable to any of these defendants. The Court, then, cannot identify any concrete injury capable of redress by a favorable decision. The Court further finds that Camacho fails to meet his burden to establish that the elements of standing as to the City of Victoria Defendants, Rowland Elementary, the Lavaca County Defendants, and the Victoria County Defendants. As such, these defendants' motion to dismiss on the issue of standing should be granted and the claims against them should be dismissed.

2.  <u>Camacho lacks standing as to his claims against Leigh Burton.</u>

Camacho claims he was harmed when Leigh Burton failed to maintain a record of a July 2020 child support hearing. Dkt. No. 25 at 31. Burton argues that Camacho cannot identify any particularized injury caused by her conduct. Dkt. No. 60. Burton is correct; Camacho's alleged injury is insufficient—it is neither concrete, particularized, nor actual

or imminent.  The Court, then, finds that Camacho lacks standing to pursue his claims against Burton.  Her motion to dismiss should be granted and Camacho's claims against her should be dismissed.

3.  Camacho lacks standing as to the claims against Women's Crisis Center (WCC).

Camacho claims that sometime in 2014, WCC aided or abetted Torres in "concealing and secreting" his children.  Dkt. No. 25 at 14.  WCC argues that, absent further details or any damages as a result, Camacho's claim does not constitute injuries capable of redress and fairly traceable to WCC.  Dkt. No. 133.  WCC is correct.  The Court finds that Camacho has failed to meet the pleading requirements to satisfy the elements of standing against WCC.

The Court further finds that Camacho has failed to plead any concrete injury caused by WCC's actions.  In addition, the vague allegations that it "aided and abetted" Torres are not fairly traceable to any specific conduct by WCC.  Camacho, then, has failed to meet his burden regarding standing as to his claims against WCC.  Accordingly, WCC's motion to dismiss should be granted and Camacho's claims against it should be dismissed.

4.  Camacho lacks standing as to his claims against DFPS.

The Court finds that Camacho also fails to establish the requirements of standing as to his claims against DFPS.  DFPS asserts that Camacho's claims that it failed to act do not constitute a causal connection between its alleged conduct and an injury capable of redress by the Court.  Dkt. No. 136.  In support, DFPS points out that Camacho merely alleges that it had notice of a police report of an incident involving his child, failed to take action and, subsequently did not fulfill a records request pertaining to his children.  Dkt. No. 25 at 29-30.  Critically, Camacho fails to allege an injury in fact caused by DFPS's

alleged inaction nor any causal connection with DFPS's conduct.  Accordingly, Camacho has failed to satisfy the elements for standing as to these claims.  DFPS's motion to dismiss should therefore be granted and the claims against it dismissed.

    5.   <u>Camacho lacks standing as to the claims against Paul Lilley and Michael Pierman.</u>

    Camacho claims he and his children were injured by the conduct of Paul Lilley and Michael Pierman.  Specifically, he claims Lilley and Pierman conspired with Torres and threatened to remove the children from Camacho's home.  *Id.* at 15.  These claims are similarly insufficient to satisfactorily plead an injury in fact fairly traceable to Lilley's and Pierman's actions.  Camacho has failed to satisfy the standing requirements regarding his claims against Lilley and Pierman and his claims against them should be dismissed.

    6.   <u>Camacho lacks standing as to his claims against Noah's Ark, Debbie White, Laura Howard, and the Kansas Department for Children and Families.</u>

    Camacho also claims he was harmed by the action of Noah's Ark and Debbie White.  *Id.* at 25.  In reviewing his claims, it appears Camacho lacks standing to pursue his claims against Noah's Ark and White.  "Standing is a jurisdictional requirement and not subject to waiver."  *Doe v. Tangipahoa Parish School Bd.*, 494 F.3d 494, 496 n. 1 (5th Cir. 2007).  Although these defendants have not specifically raised standing arguments in their motion to dismiss, it is necessary for the Court to consider this issue on its own.  "A federal court must consider its jurisdiction *sua sponte*."  *Id.  See also Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 n.2 (5th Cir. 2018) (citing *K.P. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (recognizing that standing may be addressed *sua sponte*).

    Liberally construed, Camacho's vague allegations against White and Noah's Ark seem to assert that they claimed he was attempting to kidnap his children in order to have him arrested.  Dkt. No. 25 at 25.  Again, Camacho is unable to point to any particularized

injury, caused by them, and capable of redress by the Court.  Without such a showing of a concrete and particularized injury, causally connected to White's and Noah's Ark's conduct, any injury would be speculative at best.  Accordingly, Camacho lacks standing to pursue these claims against White and Noah's Ark and they should be dismissed.

Similarly, the Court finds *sua sponte* that Camacho lacks standing as to his claims against Laura Howard and the Kansas Department for Children and Families (hereinafter, "Kansas Defendants").  Camacho alleges that the Kansas Department for Children and Families garnished his wages from his employer, Diversitech, Inc., at the direction of Laura Howard.  *Id.* at 26.  Critically, he does not dispute the existence of a state court order authorizing the wage garnishment nor does he allege any misconduct on the part of the Kansas Defendants.  Said another way, Camacho again fails to allege any injury capable of redress by the Court.  Accordingly, Camacho also lacks standing to pursue his claims against the Kansas Defendants standing and they should be dismissed.

## V.      **Recommendation**

For the foregoing reasons, it is recommended that the Court: (1) **GRANT** the motions to dismiss (Dkt. Nos. 37, 38, 39, 40, 41, 42, 44, 60, 66, 67, 129, 130, 131, 133, 136, 164, 165; (2) **DISMISS** Plaintiff's claims against the defendants listed above (collectively, "Defendants"); and (3) **DIRECT** the Clerk of Court to **CLOSE** this case.

## VI.      **Notice to Parties**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SIGNED** on this **6th** day of **June, 2023**, at Brownsville, Texas.

_____

**Ignacio Torteya, III**
**United States Magistrate Judge**

26